POULTNEY'S
HEIRS
*vs.*
OGDEN.

## POULTNEY'S HEIRS *vs.* OGDEN.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

So far as minors are prejudiced by the negligence or omissions of their tutors, and in the sale of their property as such, the title being fully vested in them, when it is made without all the formalities of law being complied with, they are entitled to restitution. See decision in preceding case. *Ante* 425

But, as regards the ordinary disposition and sale of the property of an estate, in which the rights of minors are contingent and residuary, and which is subject to the claims of creditors, the acquired rights of third persons, resting on the faith of judicial proceedings, will not be disturbed; as the rules and forms for selling minors' property do not apply. *Ibid.*

This is an action of revendication, in which the heirs of the late John Poultney seek to recover two lots of ground, sixty feet front, each, on Magazine-street, between Poydras and Girod streets; and one hundred and twenty-six feet, each, in depth; which, they allege, made part of their deceased father's succession, at his death, and is now in the possession, and claimed by the defendant, Edward Ogden.

The defendant pleaded a general denial; and that he possesses the property, under an agreement with Wilkins & Linton, by which he leased it for two years from the 1st January, 1830, with the privilege of purchasing it on certain terms. He cites his lessors and vendors in warranty.

Wilkins & Linton averred they purchased the lots in question from N. & J. Dick, and Sarah Todd, as heirs of the late John Dick deceased, whom they call in warranty.

N. & J. Dick and Sarah Todd, aver *their* ancestor, John Dick, purchased from Oliver M. Spencer, who purchased the disputed premises at sheriff's sale, on the 26th May, 1821, which sale was made in virtue of two orders of seizure and sale emanating from the District Court, in the cases of

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

Spencer *vs.* the syndics of the creditors of John Poultney, junior.

The plaintiffs' right to the property, depends on the same facts and principles as are reported in the case of Poultney's heirs *vs.* Cecil's executor: *ante* 321.

The cause was submitted to a jury, who returned a verdict for the defendant. From the judgment rendered thereon, the plaintiffs appealed.

*Grymes and J. Slidell,* for the plaintiffs, relied on the points and authorities made by them in the preceding case of the same plaintiffs against Cecil's executor.

*Conrad,* for the defendant.

The title under which this defendant holds, rests exclusively on the sale made under the proceedings in the District Court.

1. It is contended that that court had not jurisdiction of the case. The District Court being one of general jurisdiction, having cognizance of all cases, except where the law has expressly denied it, or what is the same thing, given exclusive jurisdiction to some other tribunal, the presumption is in favor of its jurisdiction, and the *onus probandi* rests upon the party who contests it. The counsel for plaintiffs have attempted to do so, but have not referred to any law conferring jurisdiction, *at all,* much less *exclusive* jurisdiction, on the Court of Probates, of cases like the present. The Civil Code of 1808 is silent on the subject. The words Court of Probates, do not once occur in it. The term Parish Court, alone is used, and it no more means Court of Probates, than it means District Court. The only decision rendered by this court, prior to the law of 1820, was that of Abat et al. *vs.* Songy's estate, 7 *Martin,* 274, which expressly denies the jurisdiction of the Court of Probates. There can be no doubt that this decision, rendered only a few months previous to the proceedings in Poultney's succession, must have been known by the eminent counsel by whom they were conducted and that their course was regulated by it. Next came the law of 1820, enlarging and defining the jurisdiction of the

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

Court of Probates. There is no doubt that law conferred jurisdiction in cases like the present; but the fact of the legislature passing that law, conferring the jurisdiction, creates a strong presumption, that in their opinion, it did not already possess it. Even that law contains no exclusive language. It says the Court of Probates *shall have* jurisdiction, but does not say that the District Court *shall not* have it. All the decisions quoted by the plaintiffs, were rendered subsequently to the passage of that law ; but as Poultney's succession was opened before its adoption, it is evident that as it contains no provisions requiring that estates already opened should be transferred to the Court of Probates, if the District Court had jurisdiction prior to the law of 1820, that law did not divest it. There is one observation, too, which may be applied to all the cases quoted by the plaintiffs. They were all cases where successions were regularly opened in the Court of Probates, and representatives to them had been appointed and confirmed under its authority, and are all based on arguments of the expediency of having all claims against the succession settled before the same tribunal from which the person, by whom it was administered, derived his authority, and of having the relative rights of creditors established in a *concurso.* See the remarks of the court in Vignaud *vs.* Tournacourt's Curator, 12 *Martin, page* 233, and in Tabor *vs.* Johnson, 3 *Ibid., N. S., page* 679. These are the two leading cases on this subject. Now, in the present case NO *representative of the succession had been appointed or recognised by the Court of Probates, and the claims of the creditors were settled and classified before one tribunal.* It may be very important that the claims against a succession should be ascertained by one tribunal, and that that tribunal should be the one by which the person who administers it was appointed, and to which he is amenable ; but is it material by what name that tribunal is called, or whether it sit below or above stairs ? When there is a positive, unequivocal declaration of legislative will, that will must be obeyed, even where it leads to consequences absurd or iniquitous ; but a court will be cautious how they

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

apply their own decisions, founded on considerations of public convenience, to cases where those motives do not exist.

2. Even if the District Court had not jurisdiction, this court has repeatedly decided that its decrees in such cases were not void, but only voidable, and conferred title to purchasers of property sold under them. Tabor vs. Johnson 3 *Martin, N. S.*, 674. Foucher vs. Carraby et al., 6 *Martin, N. S.*, 550. Donaldson et al. vs. Dorsey's syndic, 7 *Martin, N. S.*, 377. Dangerfield's executrix vs. Thornton's heirs, 8 *Martin, N. S.*, 241, and 5 *Louisiana Reports*, 355. It is certainly a wise and salutary principle, that whatever has been done under the decree of a court should remain valid, although that decree itself should afterwards be set aside. The law has, in some instances, expressly recognised this principle. See *Louisiana Code, article* 1113; Baillio vs. Wilson, 5 *Martin, N. S.*, 214; Sterling's executors vs. Gros, 5 *Louisiana Reports*, 105. In the latter case the court intimate an opinion that sales made by an executor under a will which has been admitted to probate, will confer title, although the will itself should subsequently be set aside.

3. But it is contended that the proceedings are void, for want of citation on the *heirs*. To this the answer is obvious. The children of the deceased had not accepted his succession although the time for deliberation had expired: and, consequently, were not his heirs. *Old Civil Code, articles* 73, 74, page 162. Curia Philippica, page 171, *No.* 1, *Heineccius Recitationes, vol.* 2. *No.* —, Cresse vs. Marigny, 4 *Martin's Reports*, page 57; O'Donald vs. Lobdell, 2 *Louisiana Reports*, 300. If acceptance was necessary to vest in the heirs a right to the succession, until such acceptance they were not heirs: besides, citation to a party is only necessary where there is a contest *a lis mota*, and some judgment is sought to be obtained against him; but when no judgment can, or is sought to be obtained against a party, but only a conservative measure, relative to a matter in which he is remotely or indirectly interested, there is no need of citation to him. The article 1034 and others, provide for the appointment of administrators; and the law of 1826, *Martin's*

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

*Digest, vol. 2, page 438, sec. 7,* for that of syndics *eo nomine,* by the creditors of a succession, even when the heirs have accepted with the benefit of inventory, yet, neither of them speak of citation to the heirs as at all necessary, and it has never occurred to any one that such a formality was necessary.

4. It is a confusion of ideas and terms to apply to these proceedings the term "forced surrender." To constitute a surrender there must be some one by whom it is made, either the original debtor, his heir or executor. Here there was neither. It was nothing else than the appointment by the judge of certain individuals, to administer the estate in the absence of any legal representative. Granting that the appointment might have been made by the sole authority of the judge, without the concurrence of the creditors, it does not follow, that, because that concurrence was not necessary, it must not vitiate the appointment which would otherwise have been valid. The authors speak of an estate surrendered by an insolvent debtor, and the *hereditas jacens,* or succession not accepted by the heirs, as different branches of the same subjects, and to be governed by the same principles. *Febrero, part 2, lib. 3, cap. 3, sec. 2, No. 39. Salgado part 1, cap. 13, Nos. 2 and 3, pages* 94, 95. The latter author says, (*Ibid., No.* 10,) that persons appointed to estates of insolvent debtors, or to vacant successions, are called indifferently, curators, syndics, defenders, &c., and that, in making the appointment, the judge should be governed in his choice by the wishes of the creditors: "*Præ occulis habere debet judex et sequi voluntatem et consensum creditorum.*" *Ibid., No.* 14. What more or less has been done in the present case?

5. The defendant pleads prescription. Ten years had elapsed between the sale from Spencer to Dick, (under which defendant holds) and the acceptance of the succession of Poultney by his children. The defendant and his authors were, therefore, possessors in good faith, under a title translative of property, and he comes within the provisions of articles 67 and 68, pages 487, 488, *old Civil Code.* The

circumstance of the succession not being accepted by the heirs, did not interrupt prescription, as prescription ran against the vacant succession. *Old Civil Code, page 468, article 62, and page 164, article 95.*

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

Neither did the minority of the children as *non constat,* that they would ever accept ; and, until acceptance, the estate represented the *deceased* and not the *heirs. Old Civil Code, page* 162, *article* 74. *Pothier Traité de la Propriété vol.* 8, *No.* 15. *Ibid., Introduction au Titre,* 14, *vol.* 10, *No.* 42. *Domat, liv.* 1, *tit.* 1, *sec.* 1, *No.* 14. *Des Héritiers en général dig., liv.* 41, *tit.* 3, *l.* 31, *paragraph* 5. *Salgado, part* 1, *cap.* 32, *passim. pages* 219, 220, &c.

6. A *forced respite* can, with no propriety, be termed a contract between the debtor and his creditors. Contracts are in their nature voluntary, and the assent of both parties is essential to their formation. But a forced respite is binding even on those who do not assent to it. That is an anomalous species of *contract,* which is formed without the consent of one of the contracting parties. We contend, therefore, that a respite is a personal privilege granted by law to the debtor, and not being expressly extended to his heirs, it expires with him. Be this as it may, however, Spencer, under whom this defendant holds, was never cited, did not attend the meeting, and the proceedings consequently were not binding on him. *Bainbridge vs.* Clay, 3 *Martin, N. S., page* 263. Thomas et al. *vs.* Breedlove et al., 6 *Louisiana Reports, page* 573.

*Peirce,* for the warrantors, Wilkins & Linton, N. & J. Dick et al.

During the time that the inheritance was in abeyance, or was what is called a *hæreditas jacens,* all things rightfully done, concerning said inheritance, was binding upon any heirs who might hereafter accept. They take it subject to all charges which may have accrued. *Old Civil Code, page* 161, *article* 72, and *page* 164, *article* 95.

When, therefore, the heirs of Poultney, accepting the succession in 1833, proceed to make inventory and take

EASTERN DIST.
June, 1835.
───────────
POULTNEY'S
HEIRS
vs.
OGDEN.

possession of their ancestor's estate, opened since 1819, sixteen years before, they can only make inventory of, and take the estate as they find it. If by judicial proceedings, if by color even of law, if by formal acts, by judgments or under judgments, part of the property possessed by their ancestor, sixteen years before, is found to be owned, claimed or possessed by others, the presumption of just title, under such acts, proceedings, color or judgment, is with the possessor. That which they have now done, might have been done at the time of the death of their ancestor. They have neglected or refused so to do. They must take the succession as they find it, and if they deem that there have been informalities, or technical irregularities, by which they can recover any thing, supposed by third persons to belong to themselves, it is for these supine heirs to *prove* these *irregularities,* these *informalities ;* it is they who allege them, and the burden of proof is therefore with them.

2. The District Court had jurisdiction over claims for debt of deceased persons, in 1819, and previous to the act of the 18th March, 1820. See 2 *Martin's Digest, page* 188. *Tabor* vs. *Johnson,* 3 *Martin,. N. S., page* 674. See section 16 *of act of February* 10*th,* 1813. It was certainly existing in the Superior Court, before the passage of the code. See *acts of* 1805. Was it taken away by the code of 1808 ? There are no repealing words; and if the jurisdiction of the Superior Court was taken away, it must have been by implication. It could not have been implied that the legislature intended to do that which they had no authority to do, and it is admitted by this court, that had the legislature intended to have given exclusive jurisdiction to the Court of Probates, in 1808, that they could not have succeeded in so doing, situated as that court was. *Ordinance* 1785, *Tabor* vs. *Johnson,* 681. That it was not the apparent intention of the legislature, who passed the code of 1808, to grant exclusive jurisdiction to the Court of Probates, is shown by the contemporaneous construction given to the code, by the decisions of this court, confirming that construction, by the want of power in the Court of Probates to carry

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

into effect such grant of jurisdiction. See 12 *Martin*, 231 ; where it is admitted to have been the uniform practice to that time, (August, 1822,) to bring such suits in the District Court. Upon the effect of a custom, see *Villadiego, page* 191, *cap.* 5, *No.* 11. See such custom established to be correct, by *Abat* vs. *Songy,* 7 *Martin,* 276. See what a ragged court the Court of Probates was before the act of March 18th, 1820, in Waters *vs.* Wilson, 3 *Martin, N. S.,* 138. This court declares that, previous to that act, the Court of Probates had no power to enforce its orders ; that after a curator or heir had filed a schedule, and was ordered to pay the creditors, by the Probate Court, these same creditors would have to sue said curator or heir in the District Court.

3. If the court should abide by the latter decisions, the judgment rendered by the District Court, in such cases, are not absolutely void, and sales made in executing such judgments, give title to purchasers. *Foucher* vs. *Carraby,* 6 *Martin N. S.* 550. Before the act of 1820, the Court of Probates could not have ordered a forced surrender ; the cases cited, occurred after that act, wherein it is said, as in Dupey *vs.* Griffin, 1 *Martin, N. S.,* 198, that the creditors could not apply to the District Court to order a meeting of creditors of a succession, even with the consent of the heirs.

They have since decided, that with such consent it could be done, see case 6 *Martin, N. S.,* 550, before referred to ; and if the case had arisen before the act 18th March, 1820, they would have said that the District Court was the only court, inasmuch as the syndics made by the Court of Probates, could, in case of retaining the moneys, have defied the creditors and heirs, and Court of Probates. See case before referred to, of 3 *Martin, N. S.* 138.

4. There was no need to cite the children of Poultney ; they had not accepted the inheritance ; they were minors ; they had no power to accept ; it was useless to call upon them to accept or renounce ; they could do neither. *Old Civil Code, page* 162, *article* 80 ; *page* 164, *article* 90. *Salgado, cap.* 32, *No.* 5, 30, 31.

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

5. The inheritance was a fictitious being, representing the deceased, who was the owner, *old Civil Code, article* 74. *Matienzo, lib.* 1, *title* 4, *gloss.* 14, *No.* 3, the minor children had nothing to do with it, and in no manner represented it until acceptance. *Salgado, cap.* 32, *No.* 4. *Matienzo, lib.* 1, *title* 4, *gloss.* 16, *No.* 14. A curator was appointed to represent this *hereditas jacens,* and by our law he was called syndic: the name makes no difference. *Salgado, cap.* 32, *No.* 1.

6. Poultney was insolvent when he died. His petition for respite asserts that he was unable to meet his engagements; he prays for a *concurso* of his creditors, which is formed in the District Court; this is one of the four kinds of *concursos* into which it is divided by *Salgado, part* 1, *cap.* 1, *page* 2, *No.* 3. This respite was accorded, but the *concurso* did not cease any more after giving him the respite, than it would have ceased after an unconditional surrender, and appointing a syndic; he became their syndic, as it were; he promised to pay in instalments; if he had failed to do so at the first period, the creditors could have assembled again, by suggesting this failure to this court. *Salgado, page* 1, *cap.* 1, *No.* 44. Poultney had instituted the *concursus,* and that is assimilated by the law to a case at issue between himself and his creditors. *Salgado, part* 1, *cap.* 2, *page* 14, *No.* 9. When he died, the respite did not extend to his heirs, for there were none forthcoming; his inheritance remained *jacens,* representing him and not the children; and if it did, they could only have accepted under benefit of inventory, being minors; in which case, the respite would not have benefited them. *Salgado, page* 540, *part* 2, *cap.* 30, *fin.*

It is a mistake to suppose that it was only the respite granted by the king, that ceased with the death of the debtor, for the case stated is of respite granted by creditors. See *Salgado, sup.*

The respite, then, having ceased by Poultney's death, there being a previous *concurso* formed by him in the District Court, and a case being at issue between himself and the creditors, it continued after his death; his own *procurator* or attorney joined in the application for a syndic

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

(or curator, as he would have been called under the Spanish law,) to be appointed. *Partidas 3, title 5, law* 23.

It was enough, therefore, that his inheritance was represented by his attorney, his appearance was sufficient. *Parlador rer quot., lib.* 2, *cap. fin., page* 5, *sec.* 9, *Nos.* 27, 28. *Ibid., page* 177, *No.* 20.    *Curia Philippica, page* 66, *part* 1, *section* 12, *No.* 3.

7. The act of mortgage of Spencer could not have been declared executory against the heirs, for there were no heirs until *acceptance*.

8. To the objection, that in one of the cases of Spencer *vs.* the syndics of Poultney, the act was not annexed, it is answered that this would not vitiate the sale made under the other, wherein the act was attached to the petition.

That these copies are taken out, or lost, or mislaid with ease, and after such a lapse of time, it is presumed to have been originally folded with the petition.

That the judge must have presumed to have granted the order on inspection of the act, and there is no law requiring it to be filed; that this and the objection that Ogden's power does not appear on record, cannot be pleaded to resist the authority of a judgment, if that judgment be otherwise rendered according to law.    They might have been causes for exceptions, previous to the sale.    Cox *vs.* White, 2 *Louisiana Reports*, 424.    Livingston *vs.* Walden, 4 *Martin, N. S., page* 457.

9. To the eighth point of plaintiffs, that the prayer for a citation to the syndics was an abandonment, on the part of Spencer, of the *via executiva*, and that the order of seizure was improperly granted, I answer by the same authorities, and merely adding, that if it has any force, it was a privilege which the syndics could embrace or waive ; the petition prayed that the property might be seized and sold, and the judge accorded the seizure and sale.

10. Spencer had a right to proceed against any person whom he found in possession of the estate, when it was a *hereditas jacens*, and there were no heirs of age to be cited or called upon.    *Villadiego*, 41, *cap.* 2, *No.* 64.    *Parlador, lib.*

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

2, *cap. fin. part* 4, *sec.* 2, *No.* 1.   *Galvini Lexicon, vol.* 20, *p. ante R. page* 314.

11. Act of 1817 does not apply to this case.   Kelsy *vs.* His Creditors, 2 *Martin, N. S.,* 37.

12. The creditor has a right to purchase.   *Salgado, page* 66, *part* 1, *cap.* 10, *No.* 16, 17.   *Ibid., page* 315, *part* 2, *cap.* 2, *No.* 14, 15, 16.   *Parlador, lib.* 2, *de rer quot., cap. fin. sec.* 13, *No.* 10.   *Curia Philippica, part* 2, *sec.* 22, *No.* 5.

13. Prescription is a valid plea against the present claimants, for the inheritance before accepted, represented a *major*, to wit: John Poultney, deceased, and not the minor heirs; and more than ten years had elapsed from his death to the time of acceptance.   At that time, their acceptance could not have a retroactive effect to prejudice or injure rights, acquired during such interval.   *Salgado, page* 220.

*D. Seghers,* for the heirs of Spencer, called in warranty:

1. The *pleyto ocurencia de acreedores,* or forced surrender, takes place at the instance of the creditors themselves, without being summoned by the debtor, and without his concurrence; as for instance, when a debtor dies, his creditors present their claims in the court of the *testamentaria,* each one requiring to be paid first.   4 *Febrero, ad. part* 2, *No.* 39, *page* 18.

2. The respite does not avail the heirs of the debtor, who dies before the instalments become due, unless they accept his succession unconditionally.   4 *Febrero, part* 2, *No.* 243, *page* 123.   The same principle is laid down in *Salgado, part* 2, *cap.* 30.

3. Previous to the repealing act of 1828, the jurisprudence of Spain formed in the writings of her jurisconsults made a part of the law of Louisiana.   The present case comes within the period when these laws were in force.   *Saul* vs. *His Creditors,* 5 *Martin, N. S.,* 569.

4. The heirs of Poultney failed to accept his succession at his death, and the creditors who had accorded to him a respite, had a right to consider his succession as unrepresented; an acceptance on the part of the heirs being

necessary to vest the estate in them to authorise them to interfere in the affairs of his succession. 2 *Louisiana Reports* 301. *Civil Code, article 74, page 162.*

EASTERN DIST.
June, 1835.

POULTNEY'S
HEIRS
vs.
OGDEN.

5. It has been insisted that the acceptance of the succession by the heirs has a *retroactive* effect; but, even granting this position the inheritance must be taken such as it is, at the *time* of *accepting,* and the claimants can have no right to contest any sales or other acts which may have been made during the vacancy of the inheritance. *Civil Code, article 64, page 70.* If, therefore, all the property belonging to the estate has been sold to pay the creditors, the heirs are ever afterwards barred from receiving any part thereof.

6. The jurisdiction of the matter being in the district court, by the application of the deceased for a respite, that court was the proper tribunal for the creditors to apply for a forced surrender of the estate. That tribunal was not without jurisdiction *ratione materiæ* in cases of vacant estates. Its jurisdiction has undergone no material change on this subject since the time of the decisions quoted by the plaintiffs themselves. See case of *Tabor* vs. *Johnson,* 3 *Martin, N. S.,* 674. Also, 6 *Martin, N. S.* 550. 7 *Ibid.,* 378. 8 *Ibid.,* 241. 6 *Louisiana Reports,* 355.

7. The syndics being appointed by competent authority were the legal representatives of the vacant estate of Poultney. The right of the deceased debtor was divested by lawful acts done by lawful administrators. The sheriff's sale at the suit of Spencer against the syndics was legally made, and the title acquired under it valid and good.

8. The plaintiffs in their 10th point, object that an order of seizure and sale could issue in this case, and cite the case of *Chiapella* vs. *Lanusse's syndics,* 10 *Martin,* 448, in support of their objection. That very case shows that *creditors* alone, not heirs, had a right to make the objection; whatever irregularities may have crept into these proceedings, none but creditors can complain, or inquire into them.

9. In their 12th point, the plaintiffs object to the right of Spencer, as a seizing creditor, to purchase the property

EASTERN DIST.
June, 1835

POULTNEY'S
HEIRS
vs.
OGDEN.

sold to pay his debts. The Spanish law confines this prohibition to the case of a pledge; but even if it extended to mortgages, there was no positive inhibition, and if it be an irregularity, the creditors alone can object. *Partida 5, tit.* 13, *law* 44.

10. There was no necessity to have the act of mortgage, importing a confession of judgment, declared executory against the heirs; that is not required, except when the creditor wants to proceed against the *person or the property of the heir*. *Civil Code, article* 229, *page* 200.

11. In the present case, the heirs, being minors, could not have accepted *purely and simply*. They had no right to prevent the creditors from taking possession of the estate. Citations to them would have been nugatory. 3 *Febrero, ad., part* 2, *No.* 143, *page* 57.

12. The plaintiffs insist the proceedings were irregular, because both remedies (the *via executiva* and *ordinaria*) could not be resorted to at the same time. The first alone was acted on; the other, therefore, may be considered as abandoned. It is immaterial whether citation was served on the syndic or not, as the return shows, notice of the seizure was served, which is sufficient.

*So far as minors are prejudiced by the negligence or omissions of their tutors, and in the sale of their property, as such, the title being fully vested in them, when it is made without all the formalities of law being complied with, they are entitled to restitution. See* decision in preceding case, *ante* 321.

*But as regards the ordinary disposition and sale of the property of an estate, in which the rights of minors are contingent and residuary, and which is subject to the claims of creditors, the acquired rights of third persons resting on the faith of judicial proceedings will not be disturbed, as the rules and forms for selling minors' property do not apply. Ib.*

*Bullard, J.,* delivered the opinion of the court.

The principles which must govern in this case, are precisely the same upon which that of the same *plaintiffs against Cecil's Executor*, was lately decided; and the same judgment must be rendered, for the reasons particularly set forth in the opinion of the court in that case.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.